## FULTON v BUSHER

Ohio Appeals, 8th Dist, Cuyahoga Co

No 13584.   Decided Dec 26, 1933

John W. Bricker, Attorney General, Columbus, by Daniel E. Morgan, Special Counsel, Cleveland, and Richard R. Hollington, Assistant Special Counsel, for appellant.

Frank Cullitan, Cleveland, for appellee.

Locher, Green & Woods, Cleveland, for The Park Board.

**OPINION**

By McGILL, J.

The principal questions presented to this court are:

First: Was the deposit in the bank by the clerk a deposit of public funds coming within the depository act so as to make the bank a trustee?

Second: Was the deposit of these funds by the clerk an illegal deposit which created a preference?

Third: Did the deposit of these funds held by the clerk of courts constitute a general deposit creating a relationship of debtor and creditor?

Sec 2976-10b GC relating to Park Districts provides:

"All funds under the control of said board shall be kept in depositories selected in the manner provided for the deposit of county funds, insofar as such proceedings are applicable, and such deposits shall be secured as provided in case of county funds. * * *"

It is obvious that funds under the control of the Park Board are public funds and while under the control of said Board are subject to this depository act.

However, §2976-7 GC relating to the powers and duties of the Park Board provides that:

"In case of appropriation, the proceedings shall be instituted in the name of the board, and shall be conducted in the manner provided for the appropriation of private property by municipal corporations insofar as such proceedings are applicable."

Turning now to the sections of the Code with reference to the appropriation of property by municipal corporations, we find that §3686 GC provides that:

"As soon as the corporation shall have paid the compensation assessed, or secured its payment by a deposit of money under the order of the court, possession of the property may be taken."

Sec 3691 GC provides that:
"Upon the payment or deposit, by the corporation of the amount assessed, as ordered by the court an absolute estate in fee simple shall be vested in such corporation, unless a lesser estate or interest is asked for in the application, in which case such lesser estate or interest as is so asked for shall be vested."

Sec 3695 GC provides for a review of the proceedings, and further provides that the trial court, upon proper terms, may suspend the execution of any order, and further provides that "in all cases where the municipal corporation pays or deposits the compensation assessed, and gives adequate security for any further compensation and costs, the right to take and use the property condemned shall not be affected by such review."

Again, §3690 GC provides that the court shall make such order as to payment, deposit or distribution of the amounts assessed as may seem proper.

It is further provided in §3697 GC that when a municipal corporation makes an appropriation of property, and fails to pay or take possession thereof, within six months after the assessment of compensation shall have been made, its right to make such appropriation on the terms of the assessment so made shall cease and determine.

In view of these provisions it is clear that the Park Board had the right, if not satisfied with the verdict, to pay the money into the hands of the clerk of courts. The clerk became the custodian of the fund. If the verdict and judgment were later sustained by reviewing courts, the money was then to be paid to the property owners. It is manifest that the property owners had just as great an interest in this fund the moment it was deposited with the clerk as did the Park Board. The sole duty of taking care of these funds and the custody and control were given to the clerk and it cannot reasonably be said that the Park Board had control over these funds after depositing said funds with the clerk. This is particularly clear in view of the pro-

visions giving the Park Board the immediate right to possession. The Park Board could only obtain title under §3691 GC and possession of the lands under §3686 GC by paying the money to the owners or depositing it in court. When the Park Board deposited the money with the clerk it parted with control of the funds and obtained title and the right to possession. It follows, then, that the funds when deposited with the clerk were not within the control of the Park Board so as to come within the requirements of the depository act, to-wit, §2976-10b GC.

The next question presented is whether or not the clerk had a right to deposit these funds in a bank. Inasmuch as the clerk had the exclusive control over the funds during the interim in which litigation was carried on it is clear that the clerk would have kept these monies, funds or credits in his office or in a safe, or could have placed them in any safe and suitable place which he deemed desirable. The clerk in this instance did the usual and customary thing and deposited the funds in a bank.

It is urged that, inasmuch as there is no specific statutory authority for the clerk to so deposit funds, it follows that this was an unauthorized or illegal deposit which gave rise to a preference.

It is true that there is no depository act governing the clerk of courts, as there is in the case of the County Commissioners, County ' Treasurer, Township Trustees, Boards of Education, and some other public officials.

On the other hand there is no statute which prohibits the clerk from depositing the money in a bank. In fact, the normal and usual thing to do, particularly with funds in this amount, would be to deposit the funds in a bank for safe keeping.

The only statute in Ohio bearing upon this situation is §12875 GC which was amended on May 27, 1915, to its present form, which reads as follows:

"LAWFUL DEPOSIT OF CERTAIN FEES AND TRUST FUNDS.—The provisions of §12873 GC shall not make it unlawful for the treasurer of a township, municipal corporation, board of education, or cemetery association, to deposit public money with a person, firm, company, or corporation organized to do a banking business under the laws of this state or the United States, but the deposit of such funds in such bank shall not release such treasurer from liability for loss which may occur thereby. Nor shall the provisions of §12873, GC, make

it unlawful for a county auditor, county treasurer, probate judge, sheriff, clerk of courts, or recorder, to deposit fees and trust funds coming into their custody as such officers as above, until such time as said aforesaid officers are required to make payment of the official earnings of their offices, so deposited, into their respective fee funds, as required by §2983, GC, and until such time as the trust funds, so held by them in their official capacities, may be paid to the person, persons, firms, or corporations, entitled to same, and any interest earned and paid upon said deposits shall be apportioned to, and become a part of said fees or trust funds, and shall in no instance accrue to, and be received by, the official making said deposits, for his own use."

This section of the Code, it will be noted, exempts public officials including the clerk of courts, from any criminal liability for depositing "fees and trust funds coming into their custody as such officers."

It follows, therefore, that there is no violation of any criminal statute in thus making a deposit of these funds, and inasmuch as there is no statute prohibiting the clerk from making such a deposit in the bank, we think that the clerk had a perfect right to deposit these funds in the bank.

Coming now to the relationship created between the clerk of courts and the bank when the funds were deposited, if the clerk at that time had explained the nature and source of the funds and in addition thereto had asked the bank to hold the funds intact, and the bank had consented thereto, there would undoubtedly have arisen a trust relationship. The statement of agreed facts clearly shows, and it is conceded by counsel for the liquidator, that the deputy clerk informed the bank of the source and character of the funds. The bank, however, in so far as this record discloses, did not agree to hold these funds intact. On the contrary, the account was credited with interest to the extent that in January 1933 the amount in a new account of John J. Busher, Clerk, was $74,690.38.

The bank was not instructed to hold these funds in a safety deposit box or to hold the deposit separate and apart from the general funds of the bank.

In the case of McDonald, Admr. v Fulton, Supt. of Banks, 125 Oh St 507 (1932); Matthias, J, at page 511, says:

"It is to be observed that deposit in an interest-bearing account is directed, which of course contemplates use of the fund by

the bank, and the fiduciary therefore becomes a general creditor by the very force of the statute governing his action."

That case involved the deposit of funds by a fiduciary.

The principle involved is stated in The American Law Institute, Restatement of the Law of Trusts, Tentative Draft No. 1, (1930) at page 44:

"If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes."

Again, in Morse on Banks and Banking, Vol. 1, Sixth Edition, page 510, it is said: "In the absence of evidence to show that it is the bank's duty, by agreement, express or clearly implied, to keep the funds and their investment separate, it must be treated as a general deposit."

In the case of Bank v Brewing Company, 50 Oh St 151, (1893) it is said by Williams, J, at page 157:
"Unless there is some agreement to the contrary, deposits received by the bank become its property; they belong to it, and can be loaned or otherwise disposed of by it, as any other money belonging to the bank."

In the case of Kuehnle Co. v Fulton, (Court of Appeals of Lucas County, Sixth District), 13 Ohio Law Abstract, page 579 (1932), it appears that a bank was given the right to use the money and that the account bore interest at the rate of four per cent per annum payable semi-annually. It is said by Lloyd, J, in referring to the McDonald case, supra:

"This statement of the Supreme Court relates to a statutory direction, but it is none-the-less applicable to a contractual direction whereby the parties themselves determine the character of the deposit and convert what otherwise would have been a trust relation into that of debtor and creditor."

In 51 A.L.R., p. 1346, it is stated:
"But where a general deposit of public funds in a bank which thereafter becomes insolvent was authorized or permitted, or at least not unlawful, the great weight of authority is that there is no trust impressed upon such funds in favor of their owner,

and consequently no preference in favor of the latter, as against general unsecured depositors, may be predicated on this theory."

Applying these principles to the instant case, it will be seen that there was no agreement upon the part of the bank not to mingle these funds with the deposits generally. The only obligation of the bank was to the clerk of the courts. The clerk had the sole right to withdraw these funds. The depository agreed to nothing except that the money would be available, and the fact that interest was payable on the account at the annual rate then paid on savings accounts, is an important element indicating that the bank had a right to use the funds.

Under these circumstances where the clerk of courts was made custodian of these funds and deposited them in the bank, the relationship of debtor and creditor was created in the absence of an agreement with the bank to hold the funds intact, and in the absence of a statute prohibiting the clerk from making this deposit.

The further question was argued to the court as to whether or not the claim of a preferred creditor could be paid at once, or if it should be held pending the determination of the rights of other preferred creditors similarly situated. That question was discussed in the case of State ex The Toledo Theatres and Realty Co. v Fulton, Supt. of Banks, 124 Oh St 360.

In view of our decision that the clerk is not entitled to a preference, it is unnecessary to decide the question of the right to immediate payment where there are other preferred creditors.

To summarize: We think that the depository act governing Park Boards has no application; that under the sections of the Code relating to appropriation proceedings the Park Board had the undoubted right to deposit these funds with the clerk of courts; that the Park Board then had a right to take possession of the premises and the funds having been deposited with the clerk were in the exclusive custody of the clerk until a final determination of the cause in which the judgment was rendered; that the clerk in the absence of statutory prohibitions or restrictions as to where he kept the funds, had a right to deposit the funds in the bank; that the record does not show an agreement between the bank and the clerk of the courts which would make the bank a trustee; that this was not an illegal deposit so as to create a trust relationship:

that the fact that the account bore interest indicates an intention that the bank could use the funds; and that, therefore, the relationship of debtor and creditor was created between the clerk of the courts and the bank and that the clerk is not entitled to a preference.

Accordingly a decree will be entered for the defendant and a journal entry may be drawn in accordance with these views.

LIEGHLEY, PJ, concurs in judgment.
LEVINE, J, dissents.